**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zep, Inc., <br> Plaintiff, <br> vs. <br> Brody Chemical Company, Inc. and individuals Mark Bartley, Neil Carse, Wayne Cassidy, Richard Crouse, and Anthony Strukel, <br> Defendants. | No. CV-09-0505-PHX-NVW <br><br> **ORDER** |

Before the Court is Defendant Brody Chemical Company, Inc.'s ("Brody") Motion for Partial Summary Judgment (doc. # 146), in which Defendants Mark Bartley, Neil Carse, Wayne Cassidy, Richard Crouse, and Anthony Strukel ("Individual Defendants") have joined. (Doc. # 148.) Because Richard Crouse has since filed for bankruptcy, the action is stayed as to him. (Doc. ## 153, 154.) Collectively, Defendants seek summary judgment as to the enforceability of customer and employee non-solicitation covenants contained in employment agreements between Plaintiff Zep, Inc. ("Zep") and the Individual Defendants.

**I.     Legal Standard**

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce sufficient evidence to persuade the

Court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Conversely, to defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law, and a factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.* The nonmoving party's evidence is presumed to be true and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.

1987). If the nonmoving party produces direct evidence of a genuine issue of material fact, the motion for summary judgment is denied. *Id.*

## II. Facts

Zep is a publicly-traded company that sells industrial cleaning products. To sell its products, it employs sales representatives who are expected to develop their own customer bases through their own efforts. Zep has a training program for new sales representatives that can last up to twenty-four months. However, new sales representatives that perform well can transition to a largely commission-based pay structure in much less than twenty-four months and in as little as three weeks.

When a Zep sales representative leaves the company, that representative's accounts are reassigned to existing Zep sales representatives. When possible, an account is reassigned to a sales representative with specific knowledge and experience selling to other customers in the same industry segment. Otherwise, the account is reassigned to a sales representative that has demonstrated growth potential or to a newer sales representative to speed his or her transition from training to selling.

The Individual Defendants in this case were originally employed by Zep as sales representatives. In that capacity, they were required to sign contracts containing covenants not to solicit Zep's customers or employees during the period of employment and for certain periods of time post-employment. Defendants Strukel and Cassidy signed contracts containing the following covenant regarding non-solicitation of customers:

> Sales Representative hereby expressly covenants and agrees that during the term of employment hereunder and for a period of eighteen (18) months following the termination of employment hereunder, whether such termination is voluntary or involuntary, Sales Representative will not, for or on behalf of Sales Representative or any person, persons, partnership, or corporation (except Company), directly or indirectly, within the Territory [defined as Maricopa County, Arizona] sell or attempt to sell or solicit the sale of any products of the same or similar kind as those offered or sold by Company at any time during the twelve (12) month period immediately preceding the termination of Sales Representative's employment hereunder, to any person, persons, partnerships, or corporation who was solicited for the sale of or sold any such products by Sales representative at any time during Sales Representative's employment hereunder.

- 3 -

It also contained the following covenant regarding non-solicitation of employees:

> Sales Representative hereby expressly covenants and agrees that during the term of employment hereunder and for a period of eighteen (18) months following the termination of employment hereunder, whether such termination is voluntary or involuntary, Sales Representative will not, for or on behalf of Sales Representative or any person, persons, partnership, or corporation (except Company), directly or indirectly, induce, persuade, or encourage or attempt to induce, persuade, or encourage any person who was employed by the Company at any time during the term of Sales Representative's employment hereunder, to terminate such employee's position with the Company and become employed by any person, persons, partnership, or corporation which is engaged in the offer or sale of products of the same or similar kind as those offered or sold by Company at any time during the twelve (12) month period immediately preceding termination of Sales Representative's employment hereunder.

In addition to the above non-solicitation covenants, it also contained the following severability clause:

> The provisions of this Agreement are independent of and separable from each other. If any provision is declared invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of any other provisions of this Agreement.

Defendants Carse and Crouse signed a newer version of the contract that contained the following covenant regarding non-solicitation of customers:

> <u>Non-Solicitation Covenant</u>. Employee covenants and agrees that during the term of Employee's employment with employer and for a period of twelve (12) months following the termination of such employment, whether voluntary or involuntary, Employee shall not for or on behalf of Employee or any such person or entity (except Employer), directly or indirectly, solicit, contact, or communicate with or attempt to solicit, contact or communicate with any customer or potential customer of Employer that Employee solicited, contacted, communicated with, sold or received commissions or other compensation with respect to at any time during the six (6) month period immediately preceding the termination of Employee's employment with Employer, for the purpose of or with the view to selling or providing any products, services or equipment or items competitive with the Product Line.

It also contained the following covenant regarding non-solicitation of employees:

> <u>Non-Inducement Covenant</u>. Employee covenants and agrees that during the term of Employee's employment with Employer and for a period of twelve (12) months following termination of such employment, whether voluntary or involuntary, Employee shall not, for or on behalf of Employee or any person or entity, directly or indirectly, induce, persuade or encourage or attempt to induce persuade or encourage any person who was employed by Employer during the twelve (12) month period immediately preceding Employee's termination, to terminate such employee's position with Employer.

In addition to the above non-solicitation covenants, it also contained the following severability clause:

> <u>Severability</u>. If any provision of this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, such invalidity or unenforceability shall not affect the validity or enforceability of any other provisions of this Agreement and the remaining provisions of this Agreement shall remain in full force and effect.

Though Zep originally had no evidence that Defendant Bartley had signed a contract containing similar restrictive covenants, it recently produced a contract signed by Bartley with the following covenants:

> 17. The Salesman further independently covenants and agrees . . .
>
> (b) That he will NOT, during the term of this contract, nor for one (1) year immediately following the termination of this contract, for himself, or for any other person, persons, firm, company, corporation, or partnership, call upon to sell or endeavor to sell to any of the customers and/or patronage of the Company, [various products] or any other items incidental to or kindred to sanitary, janitor, and/or building maintenance supplies, and/or products now, or from time to time sold or distributed by the Company during the term of this contract.
>
> (c) That he will NOT, during the term of this contract, nor for one (1) year immediately following the termination of this contract, directly or indirectly, for himself, or for or in conjunction with any other person, persons, firm, company, corporation, or partnership, solicit, divert or take away any of the customers or patronage of the Company.
>
> (d) Each of the foregoing subparagraphs . . . is and shall be deemed to be a separate covenant independent of each other such subparagraph and the invalidity or unenforceability of any such subparagraph shall not affect the validity of the others.

At various times between early 2008 and early 2009, each of the Individual Defendants began working for Brody, one of Zep's direct competitors. They all admit that their employment with Brody began prior to the termination of their employment with Zep. During the time they worked for both companies simultaneously, they sold Brody products to Zep customers and accessed confidential information maintained by Zep, such as customer names, addresses, contact information, sales histories, and pricing information. Defendants Cassidy, Crouse, and Carse admit to downloading customer lists and information from Zep's databases onto their personal computers shortly before

ceasing employment with Zep.  Defendant Cassidy, in particular, downloaded several hundred pages of detailed customer information and purchasing history from Zep's databases the day after entering into an employment relationship with Brody.

In addition to using the information to sell Brody products to Zep customers while still employed by Zep, Defendants Cassidy and Carse sent the customer information to Brody employees.  Brody also paid referral bonuses to Defendants Bartley, Strukel, and Carse for bringing Zep sales representatives to Brody.  After ceasing employment with Zep, the Individual Defendants retained documents containing Zep's confidential information on their personal computers.  Zep has been unable to recapture a substantial number of the customers it lost when the Individual Defendants departed for Brody.

**III. Analysis**

A number of Zep's claims against Brody and the Individual Defendants are predicated on customer and employee non-solicitation covenants included in the Individual Defendants' employment agreements with Zep.  Defendants challenge the scope of the covenants.

**A. Enforceability as Written**

The restrictive covenants at issue are anti-piracy agreements, "designed to prevent former employees from using information learned during employment to divert or to 'steal' customers from the former employer." *Olliver/Pilcher Ins., Inc. v. Daniels*, 148 Ariz. 530, 531, 715 P.2d 1218, 1219 (1986).  "A restrictive covenant — whether a covenant not to compete or an anti-piracy agreement — is enforceable as long as it is no broader than necessary to protect the employer's legitimate business interest." *Hilb, Rogal & Hamilton Co. v. McKinney*, 190 Ariz. 213, 219, 946 P.2d 464, 467 (Ct. App. 1997).  With respect to sales representatives, the "employer's protectable interest [is limited] to those customers to whom the employee represented the employer's goodwill." *Amex Distrib. Co. v. Mascari*, 150 Ariz. 510, 518, 724 P.2d 596, 604 (Ct. App. 1986).  "When the restraint is for the purpose of protecting customer relationships, its duration is

1  reasonable only if it is no longer than necessary for the employer to put a new man on the
2  job and for the new employee to have a reasonable opportunity to demonstrate his
3  effectiveness to the customers." *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 370,
4  982 P.2d 1277, 1284 (1999) (quoting *Amex Distrib. Co.*, 150 Ariz. at 518, 724 P.2d at
5  604). Though determining the reasonableness of a restrictive covenant is "a fact-
6  intensive inquiry that depends on weighing the totality of the circumstances," it is
7  ultimately a question of law. *Id.* at 366-67, 982 P.2d at 1280-81.

### 1. Customer Non-Solicitation Covenants

The duration of the post-employment restrictions in all of the customer non-solicitation covenants at issue, including Defendant Bartley's, is longer than necessary for Zep to put a different sales representative on the job and have that representative demonstrate his or her effectiveness to the customer. The restriction in Defendants Strukel and Cassidy's version lasts for eighteen months. The restriction in Defendants Carse, Crouse, and Bartley's versions lasts for twelve months.

Zep justifies this duration as the amount of time it takes them to train a new sales representative to take over the accounts. However, Zep admits that it often reassigns the accounts of a departed representative to existing representatives with experience in the given industry segment. It also frequently reassigns accounts to existing representatives that have demonstrated growth potential. Therefore, the restrictive covenant does not necessarily need to last long enough to train a brand new sales representative to take over the accounts. Even when Zep does have to train a new employee, skilled sales people can transition to commission-based pay with as little as three weeks of training. Defendant Carse, for example, was placed on full commission after only three weeks with Zep. Furthermore, most of Zep's customers order cleaning products more frequently than once a year. Consequently, a sales representative that has been transferred an existing account will likely have multiple opportunities to demonstrate his or her effectiveness to the

customer in far less than a year's time. Therefore, as written, none of the customer non-solicitation covenants are enforceable.

### 2. Employee Non-Solicitation Covenants

The employee non-solicitation covenants are similarly overbroad. They purport to prevent former sales representatives from soliciting any of Zep's employees no matter the extent of the sales representative's relationship, if any, with that employee. Therefore, the employee non-solicitation covenants are also unenforceable as written.

## B. "Blue Pencil" Modifications

"Generally, courts do not rewrite contracts for parties." *Olliver/Pilcher*, 148 Ariz. at 533, 715 P.2d at 1221. However, "[i]f it is clear from its terms that a contract was intended to be severable, the court can enforce the lawful part and ignore the unlawful part." *Id.* Under this "blue pencil" rule, a court can eliminate "grammatically severable, unreasonable provisions," but cannot add terms or otherwise rewrite unenforceable restrictive covenants. *Farber*, 194 Ariz. at 372, 982 P.2d at 1286. All of the employment agreements at issue in this case contained a severability clause. Therefore, the covenants may be modified to the extent permitted by the "blue pencil" rule.

### 1. Customer Non-Solicitation Covenants

To save the post-employment restrictions in all of the customer non-solicitation covenants at issue would require more than eliminating grammatically severable, unreasonable provisions. Specifically, it would require the Court to supply new terms for the duration of the restrictions. Therefore, none of the covenants can be modified to remedy the unenforceable restrictions on solicitation *after* employment with Zep has terminated.

The restrictions *during* employment, however, may be saved. Policy considerations requiring courts to police post-employment restrictions on solicitation do not apply to restrictions during employment, because employees owe their employers the utmost loyalty and good faith at all times during the period of employment. *See Sec. Title*

*Agency v. Pope*, 219 Ariz. 480, 492, 200 P.3d 977, 989 (Ct. App. 2008); *McCallister Co. v. Kastella*, 170 Ariz. 455, 457, 825 P.2d 980, 982 (Ct. App. 1992). Encompassed within the fiduciary duty of loyalty are obligations not to solicit the employer's customers or employees. *Pope*, 219 Ariz. at 492, 200 P.3d at 989; *Kastella*, 170 Ariz. at 459, 825 P.2d at 984.

In this case, all of the customer non-solicitation covenants are enforceable once the post-employment restrictions are removed. Therefore, modified as follows, Defendants Strukel and Cassidy's version is enforceable:

> Sales Representative hereby expressly covenants and agrees that during the term of employment hereunder ~~and for a period of eighteen (18) months following the termination of employment hereunder, whether such termination is voluntary or involuntary~~, Sales Representative will not, for or on behalf of Sales Representative or any person, persons, partnership, or corporation (except Company), directly or indirectly, within the Territory [defined as Maricopa County, Arizona] sell or attempt to sell or solicit the sale of any products of the same or similar kind as those offered or sold by Company at any time during the twelve (12) month period immediately preceding the termination of Sales Representative's employment hereunder, to any person, persons, partnerships, or corporation who was solicited for the sale of or sold any such products by Sales representative at any time during Sales Representative's employment hereunder.

Similarly, Defendants Carse and Crouse's version is enforceable with the following change:

> <u>Non-Solicitation Covenant</u>. Employee covenants and agrees that during the term of Employee's employment with employer ~~and for a period of twelve (12) months following the termination of such employment, whether voluntary or involuntary~~, Employee shall not for or on behalf of Employee or any such person or entity (except Employer), directly or indirectly, solicit, contact, or communicate with or attempt to solicit, contact or communicate with any customer or potential customer of Employer that Employee solicited, contacted, communicated with, sold or received commissions or other compensation with respect to at any time during the six (6) month period immediately preceding the termination of Employee's employment with Employer, for the purpose of or with the view to selling or providing any products, services or equipment or items competitive with the Product Line.

Finally, Defendant Bartley's covenants are enforceable with the following modifications:

> 17. The Salesman further independently covenants and agrees . . .
>
> (b) That he will NOT, during the term of this contract, ~~nor for one (1) year immediately following the termination of this contract,~~ for himself, or for any

- 9 -

other person, persons, firm, company, corporation, or partnership, call upon to sell or endeavor to sell to any of the customers and/or patronage of the Company, [various products] or any other items incidental to or kindred to sanitary, janitor, and/or building maintenance supplies, and/or products now, or from time to time sold or distributed by the Company during the term of this contract.

(c) That he will NOT, during the term of this contract, ~~nor for one (1) year immediately following the termination of this contract,~~ directly or indirectly, for himself, or for or in conjunction with any other person, persons, firm, company, corporation, or partnership, solicit, divert or take away any of the customers or patronage of the Company.

The above "blue penciling" is limited and does not amount to rewriting the covenants. In any event, the dangers inherent in "blue penciling" are absent in this case because the resulting covenants do no more than recite the common law fiduciary duty of loyalty and good faith imposed on all employees.

## 2. Employee Non-Solicitation Covenants

Saving the restrictions on employee solicitation both after and during the term of employment would require more than eliminating grammatically severable, unreasonable provisions. To save the post-employment restrictions, the Court would have to add language qualifying the relationship between the former employee and those current employees he or she may not solicit. The restrictions during employment also cannot be saved. While the post-employment durations can be removed, the remaining language in both versions is not amenable to "blue pencil" modifications that would restrict employees from soliciting only current as opposed to former Zep employees.

IT IS THEREFORE ORDERED that Defendant Brody Chemical Company, Inc.'s Motion for Partial Summary Judgment (doc. # 146), joined by Defendants Mark Bartley, Neil Carse, Wayne Cassidy, and Anthony Strukel, is granted in part and denied in part. Because the ruling is not dispositive of any claims, no claims will be dismissed.

DATED this 6th day of April, 2010.

_____
Neil V. Wake
United States District Judge